## JOHN J. FRYE

### *vs.*

## EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

## Cumberland.   Opinion December 12, 1913.

*Application.   Contract.   Estoppel.   Evidence.   Forfeiture.   Insurance.   Policy.
Premiums.   Revised Statutes, Chapter 49, Section 104.   Waiver.*

The plaintiff was insured under a Free Tontine Policy of Life Insurance,
calling for payment of annual premiums for twenty years.   The written
application for the policy was not printed in or attached to the policy.
*Held:*
1.   That this application was admissible as evidence and as forming part of
the contract of insurance.
2.   The policy provided that if the assured failed to keep up his payment of
annual premiums, he was entitled to a paid-up policy, after three years, for
a specified amount of the original policy, but also provided that the assured
must return the old policy receipted to the society within six months after
the date upon which the last premium in default had fallen due; otherwise,
the policy should determine and all premiums paid should be forfeited to
the society.   The plaintiff paid six annual premiums and when the seventh
became due, the agent in the society's office in Portland said to him, "this
policy is good for as many twentieths as you have paid in; you don't need
any other policy."
*Held:*
3.   Under the provisions of Revised Statutes, chaper 49 section 93, this
was a waiver of the return of the old policy, which was binding on the
society, and that the society is now estopped to deny its liability under the
old policy.

On report.   Action to stand for trial.

This is an action of assumpsit on a policy of life insurance for
twenty-five hundred dollars.   The policy issued to plaintiff was
called the Free Tontine Policy.   Under this policy, the plaintiff was
to pay in advance thirty-one dollars and sixty-three cents, and there-
after to pay annually on or before the 29th day of January in each

year, one hundred and nineteen dollars and fifty cents, for twenty years. The policy provided for a paid-up policy after three years, for as many twentieths of the original policy as complete annual premiums have been paid. The plaintiff paid six annual premiums. When the seventh became due, the agent in charge of the society's office in Portland said to the plaintiff, "this policy is good for as many twentieths as you have paid in when it matures. You don't need any other policy."

The written application for the policy was not printed in nor attached to the policy.

Plea, the general issue, with brief statement of the Statute of Limitations. At the conclusion of the evidence, the case was reported to the Law Court, upon so much evidence as is legally admissible; the Law Court to determine whether the action is maintainable. If not maintainable, judgment is to be ordered for the defendant; if maintainable, the action is to stand for trial before the jury.

The case is stated in the opinion.

*M. P. & H. P. Frank,* for plaintiff.

*Symonds, Snow, Cook & Hutchinson,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHILBROOK, JJ.

PHILBROOK, J. This is an action in assumpsit, coming before this court on report. October 29, 1891, the defendant company issued to the plaintiff a so called Free Tontine Policy of life insurance for twenty-five hundred dollars. On this policy the plaintiff was to make an advance payment of thirty-one dollars and sixty-three cents, and was to pay an annual premium of one hundred and nineteen dollars and fifty cents on or before the twenty-ninth day of January in each year following for a period of twenty years, after which no further payments were required. Among the list of privileges contained in the policy is to be found the following: "It provides for a paid-up policy after three years for as many twentieths of the original policy as complete annual premiums have been paid." The plaintiff paid six annual premiums only; and when the seventh annual premium became due, he went to the office of F. H.

Hazelton, who was in charge of the company's office in Portland and acting as its agent, according to the testimony of the plaintiff, "and spoke to him in regard to not continuing the policy." After some conversation Mr. Hazelton expressed a desire to see the policy and the plaintiff went to his office and got it. When the policy had been examined by Mr. Hazelton, he remarked, according to the plaintiff's testimony, "this is a different policy from what I thought it was, this is good for as many twentieths as you have paid in when it matures, you don't need any other policy." The plaintiff further testified that fully relying upon that statement, he did not return the receipted policy which he held, and made no further effort to obtain any other policy. Under the choice of six methods of settlement provided in the policy and available at the completion of the tontine period of twenty years, the plaintiff claimed that he was entitled to six-twentieths of the surrender value of the policy, said surrender value being, as he says, sixteen hundred and seventy-two dollars, together with the surplus then apportioned by the society, which surplus, the plaintiff says, then was, or ought to have been, eight hundred and thirty-six dollars. Upon refusal of the society to pay the claim, this suit was brought, the writ being dated August 7, 1912.

The policy in the case contains the words, "In consideration of the written and printed application for this policy, which is hereby made a part of this contract," and the first controversy is whether the application is to be admitted in evidence and whether certain stipulations contained in the application are to be given any weight or consideration in determining the rights of the parties in this action. The plaintiff cites R. S., ch. 49, sec. 104, "Nor shall any such company, or any agent, sub-agent, broker, or any other person, make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy." Since the application was not "plainly expressed in the policy" the plaintiff urges that it cannot be introduced in evidence or be regarded as any part of the contract between the parties. This act was passed by the Legislature of 1891 and was approved April 2, 1891. The policy in question, being dated October 29, 1891, was issued after this act became effective. The sentence above quoted, and relied upon by the plaintiff, is only part of the act. By reference to the original

we observe its title to be, "An act to prohibit discrimination in life or endowment insurance policies." The entire act is as follows:

"Section 1.    No life insurance company doing business in this state, shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and expectation of life, in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts which it makes.    Nor shall any such company or any agent, sub-agent, broker, or any other person, make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued thereon.    Nor shall any such company or agent, sub-agent, broker, or any other person, pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premium payable in the policy; or any special favor or advantage in the dividends or other benefit to accrue thereon; or any valuable consideration or inducement whatever, not specified in the policy contract of insurance.

"Section 2.    Any person or corporation violating any provisions of this act shall be fined not more than two hundred dollars; and it is hereby made the duty of the insurance commissioner, on the conviction of any person acting as such agent, sub-agent, or broker, to revoke the certificate of authority issued to him at once, for the term of one year."

Thus it may be properly inferred that rebating and discrimination in the insurance business had reached such conditions and had assumed such proportions as to become an evil worthy to be deemed a statutory misdemeanor, and of such grave import as to not only call for punishment in the way of a fine but also for a suspension of a civil privilege for a year.    It was plainly the intent of the Legislature to provide against secret agreements regarding rebates and discrimination that inspired the act of 1891 upon which plaintiff relies, but of which he only quotes a portion.    In drafting contracts it is a long established practice, sanctioned by the common law, to refer to some other existing document or writing specifically, and make it, by such reference, a part of the contract thus being drafted. The contention of the plaintiff is that in case of insurance contracts or policies this practice is forbidden with reference to any and all

elements of the contracts between the parties. We cannot adopt the view that the Legislature intended a provision so far reaching as that claimed by the plaintiff, but rather the intention was that no agreement should be made regarding rebates or discriminations in the insurance contract unless the same was "plainly expressed in the policy." This act was construed in *State* v. *Schwarzchild*, 83 Maine, 261, where Mr. Justice Haskell says: "The true construction of the act of 1891, chap. 281, is to require life insurance companies to give equal terms to those persons whom it insures that are of the same class, and to stipulate the terms of insurance in the policies, and to accord to none any other." This construction is in harmony with the view for which we are now contending.

The defendant also argues that the application in this case is for a policy other than the one the plaintiff holds, but the real controversy demands a broad view and we are not disposed to give great weight to this argument, since the case clearly shows that the policy upon which the plaintiff relies was in fact issued as a result of the application in question.

Believing that we have declared the true meaning of the Legislature in the act of 1891, as applied to this case, and that if the law making body had intended such a fundamental charge as that contended for by the plaintiff, or would abrogate an established and convenient method of legal precedent, it would have used language leaving no room for doubt, we admit the application as a part of the contract between the parties in this case.

The list of privileges in the policy already referred to, providing for a paid-up policy, must therefore be examined in connection with the application. In the latter, under the heading "Privileges," we find, "If premiums upon the policy, for not less than three consecutive years of assurance, shall have been duly received by the society, and default shall be made in payment of a subsequent premium, the policy may be surrendered for a non-participating, paid-up policy, for the entire amount which the full reserve on the policy, according to the present legal standard of the State of New York will then purchase as a single premium, calculated by the regular table for single premium policies, now published by the society; providing, that the policy be returned to the society duly receipted within six months after the date upon which the last

premium in default has fallen due; otherwise the policy shall cease and determine and all premiums paid thereon shall forfeit to the society." The receipted policy not having been returned within such six months, and no such paid-up policy having been obtained, the defendant society says that the plaintiff has no cause of action. To this the plaintiff replies by citing *Chase* v. *Phoenix Mutual Life Insurance Co.,* 67 Maine, 85, and by calling attention to the statements of Mr. Hazelton, already quoted herein, and to R. S., chap. 49, sec. 93, by virtue of which he says that agents of an insurance company are to "be regarded as in the place of the company in all respects" and also that "the company is bound by their knowledge of the risk and of all matters connected therewith."

Before we compare the case at bar with *Chase* v. *Insurance Company,* supra, it may be observed that it has been claimed that in the latter case, decided more than thirty-six years ago, our court announced a position which was out of harmony with that taken by nearly all the other state courts in this Union, and out of harmony with that taken by the Supreme Court of the United States. We believe that those who make such a claim did not give the opinion in that case a careful and discriminating examination. As we shall endeavor to show, that case is in harmony with the views of other courts whose opinions are entitled to respect and will sustain our final conclusion upon the points now under discussion. In that case the policy contained the following: "It being understood and agreed that if after the receipt by the company of not less than two or more annual premiums, this policy should cease in consequence of the non-payment of premiums; then upon a surrender of the same, provided such surrender is made to the company within twelve months from the time of such ceasing, a new policy will be issued for the value acquired under the old one, subject to any notes that may have been received on account of premiums." In that case three annual premiums only were paid, the last payment being in December, 1869. Chase died December 28, 1873, not having surrendered his policy within the twelve months from the time when he ceased to pay premiums. The court gave judgment against the company and it has been held by critics of this judgment that our court did not give full force and effect to the twelve month provision for return of the policy as a pre-requisite to maintaining an

action against the company. Those who so criticize seem to have over-looked a second provision in the Chase policy, distinct from the provision just above quoted which was as follows: "If the said premiums shall not be paid at the office of the Company, in the city of Hartford, Conn., or to an agent of the company, on his producing a receipt, signed by the president or secretary on or before the date above mentioned, then, in every such case, the said company shall not be liable for the payment of the whole sum assured, but only for a part thereof, proportionate with the annual payments made as above specified, and this policy shall cease and determine." Mr. Justice Barrows, speaking for the court in the Chase case, after referring to the label on the policy as being "non-forfeiting," said: "Stipulations for a forfeiture in a policy thus labeled should be strictly construed. We do not think the second express condition should be so construed as to make the right of the insured to recover such part of the sum as is 'proportionate with the annual payments' which have been made, dependent upon the surrender of the policy within twelve months after the first failure to meet an annual payment and upon the reception of a new policy. If such had been the design of the provisions respecting the issue of new policies, it would have been easy to say so. But there is no such stipulation. The terms upon which the company will issue paid-up policies, (which the insured would doubtless find more convenient and available to be used, as they often are, as security for a loan) are stated by themselves. There is no necessary connection between them and the second express condition, nor any thing to indicate that the limited liability recognized in that condition is to be ignored unless the insured surrenders the old and takes out a new policy. The meaning and effect of that condition seems to be that a failure to pay one of the annual premiums on or before the day specified will put an end to the contract for the whole sum, at the option of the insurers; and thereafterwards they will be liable only for such proportion thereof as the payments previously made bear to the whole amount of the premiums stipulated for." The able jurist further declared that it was upon "such a policy as this" that he based his views, and it is plain to be seen that judgment for the plaintiff in that case was the result of the second condition expressed in the policy and that the provision for a paid-up policy at the end of

twelve months after failure to pay premiums was not over-looked or ignored, but on the other hand its full import was carefully considered. Now turning to the policy and application in the case at bar we find a contract differing from that in the Chase case in several particulars. The policy *and application* in the present case "provides for a paid-up policy after three years for as many twentieths of the original policy as complete annual premiums have been paid," but also provides that if "default shall be made in payment of a subsequent premium, the policy may be surrendered for a nonparticipating, paid-up policy," and adds "providing, that the policy be returned to the society duly receipted within six months after the date upon which the last premium in default has fallen due; otherwise the policy shall cease and determine and all premiums paid thereon shall forfeit to the society." Neither in this policy or application are to be found the second condition such as appeared in the Chase policy and upon which the court ordered judgment against the insurance company. It would seem that the plain terms of the contract in the case at bar, and the failure of the plaintiff to observe the terms imposed upon him by that contract would be decisive of the rights of the parties in this case unless some other element successfully intervened.

That such an element did intervene, is now claimed by the plaintiff, by virtue of the alleged assurances of Mr. Hazelton and by virtue of the statute, R. S., chap. 49, sec. 93. Of this statute also the plaintiff only quotes a portion, the entire section reading as follows:

"Section 93. All notices and processes which, under any law, by-law or provision of a policy, any person has occasion to give or serve on any such (foreign insurance) company, may be given to or served on its agent, or on the commissioner, as provided in the preceding section, with like effect as if given or served on the principal. Such agents and the agents of all domestic companies shall be regarded as in the place of the company in all respects regarding any insurance effected by them. The company is bound by their knowledge of the risk and of all matters connected therewith. Omissions and misdescription known to the agent shall be regarded as known by the company, and waived by it as if noted in the policy." Under this statute, the plaintiff claims that the statments of Mr. Hazelton,

as agent of the company, are not only admissible in evidence, but that they constitute a waiver on the part of the defendant society to claim a return of the old policy, or act as an estoppel against the society to now deny liability on the ground that plaintiff had not complied with the terms of the contract.

This latter act upon which the plaintiff relies was adopted by the Legislature in 1870. We have examined with some care each case brought before this court, since that time, in which this statute has been examined and construed. In a large majority of those cases the contention has been with reference to the knowledge on the part of agents regarding the risk when the application for insurance was made. One case, however, *Day* v. *Insurance Co.,* 81 Maine, 244, seems to be decisive of the contention now under consideration. In that case, the policy required proof of loss to be submitted within a certain time after the fire, which was not done. In excuse for not doing so the plaintiff introduced a letter from an agent of the company containing these words "Make no move in the Day case until I see you." Defendant took exceptions to the admission of the letter and also to the following instruction given by the presiding Justice at nisi prius: "I say then further, if that letter was written by Mr. Robinson (the agent) for and in behalf of the company, and was by authority of the company, because what I am speaking of now must come from the company itself, and if from the other testimony, you are satisfied that there were negotiations going on between these parties from the time, or very near the time, within thirty days of the time of the loss, continued up to that time, that would be a waiver of notice entirely." The exceptions to the admission of the letter from the agent and to the above instructions were overruled. In that case Mr. Justice Walton, for the court said: "It is claimed that the letter was inadmissible because, by the terms of the policy it was declared that no act of any agent of the company, other than its secretary or president, shall be construed or held to be a waiver of a full and strict compliance with all the provisions of the policy. The policy does contain such a provision. But we have no hesitation in declaring the provision illegal and void. Previous to the enactment of our present insurance law, policies had become so loaded down with provisos, limitations and conditions that in many cases they secured to the insured nothing

better than an unsuccessful law suit in addition to the loss of his property. And one of the purposes of our present statute was to put an end to this evil. The statute declares that the agents of all insurance companies, foreign or domestic, shall be regarded as in the place of the company *in all respects,* regarding any insurance effected by them; and that all provisions contained in any policy in conflict with any of the provisions of said chapter shall be null and void. We think these provisions should not be limited in their application to the agents through whom insurance is effected, or to those whose names are borne upon the policies. We think they were intended to apply to all the agents of insurance companies; to agents appointed to investigate the circumstances attending fires and to adjust losses as well as to those through whom the insurance is effected."

In the case at bar, under the authority of *Day* v. *Insurance Co.,* supra, it must be declared that the provisions of the policy, "No person except one of the executive officers named above is authorized to make, alter or discharge contracts or waive forfeitures" is "illegal and void," and the act of Mr. Hazelton, was not only a waiver of the requirement to return the old policy but that the defendant company is bound by that waiver. In accordance with the stipulation in the report the entry must be,

*Action to stand for trial.*